IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| KATHLEEN M. SKINSKI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:23-cv-1032 (RDA/LRV) |
| | ) |
| PLANAR SYSTEMS, INC., | ) |
| | ) |
| Defendant. | ) |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter comes before the Court on Defendant Planar Systems, Inc.'s Partial Motion to Dismiss. Dkt. 12. This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter is now ripe for disposition. Considering Defendant's Partial Motion to Dismiss together with the Complaint (Dkt. 1), Defendant's Memorandum in Support (Dkt. 13), Plaintiff Kathleen M. Skinski's Opposition (Dkt. 14), and Defendant's Reply (Dkt. 15), the Court GRANTS Defendant's Partial Motion to Dismiss (Dkt. 12) for the reasons that follow.

I. BACKGROUND

A. Factual Background[1]

Plaintiff Kathleen M. Skinski ("Plaintiff") is a female former employee of Defendant Planar Systems, Inc. ("Planar" or "Defendant"). Dkt. 1 ¶¶ 20, 60, 89. Planar is a global manufacturer of digital display and signage technology. *Id.* ¶ 5. In bringing the instant suit against

---

[1] For purposes of considering the instant Partial Motion to Dismiss, the Court accepts all facts contained within the Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

1

Planar, Plaintiff alleges an assortment of grievances from her time as an employee until the termination of her employment.

Plaintiff began working at Planar on November 20, 2017 as a General Manager of Broadcast. *Id.* ¶ 20. At all times during her employment, Plaintiff worked remotely from her home in Falls Church, Virginia. *Id.* ¶ 21. During her tenure as General Manager, Broadcast sales grew from $2.1 million to $40 million, *id.* ¶ 23, and Plaintiff negotiated one of the biggest sales in the company's history, which was valued at over $6 million, *id.* ¶ 24. While Plaintiff never received any written or oral performance reviews, *id.* ¶ 29, she did receive praise for her efforts on numerous occasions from both her direct supervisor, Adam Schmidt, Senior Vice President of Marketing, Sales, and Pro Services, and Planar's Chief Executive Officer, Zach Zhang, *id.* ¶¶ 20, 30.

In 2019, Plaintiff received a $10,000 per year increase to her compensation package, but did not receive any further adjustments to her compensation since then, despite asking for raises. *Id.* ¶ 31. Although Mr. Schmidt indicated that he would review and adjust Plaintiff's compensation, no action was ever taken. *Id.* In 2021, Plaintiff asked Mr. Schmidt if they could schedule a regular, recurring meeting, but he told her, "I don't believe in standing meetings." *Id.* ¶ 32.

At some point, Planar's Broadcast group was expanded to include Virtual Production. *Id.* ¶ 33. As a result, Alex Zou joined Plaintiff's team and reported directly to her from 2018 to May 2021. *Id.* In May 2021, Mr. Schmidt segmented Virtual Production from Broadcast and established a new, independent Virtual Production group, with Mr. Zou at the helm as General Manager. *Id.* ¶ 34. Plaintiff alleges that once Mr. Zou received this promotion, he began to belittle and discredit her. *Id.* ¶¶ 35-36. For instance, on July 13, 2021, Mr. Zou sent an email to Mr.

Schmidt and Kim Brown, an employee in the Marketing department, suggesting that Plaintiff was confusing customers as to who was leading the Virtual Production team and demanding that Plaintiff not lead future Virtual Production webinars. *Id.* ¶ 35. Ms. Brown responded to Mr. Zou that the issue had been discussed with Mr. Schmidt prior to the webinar, and that it had been decided that Plaintiff was the best person for the role, based on her knowledge and experience. *Id.* ¶ 37. Additionally, despite no longer being part of the Broadcast group, Mr. Zou did not remove "Broadcast" from his email signature line and was still receiving commissions on pure Broadcast deals as of May 31, 2022. *Id.* ¶ 38. Plaintiff questioned management about this on several occasions but never received a substantive response. *Id.*

Plaintiff avers that Mr. Zou continuously interfered with her work after he was promoted. *Id.* ¶ 39. For example, in September 2021, Mr. Zou sent an unsolicited email to a Broadcast customer of Plaintiff at ESPN in an attempt to circumvent Plaintiff and undermine her business relationship with ESPN. *Id.* After learning of this incident, Mr. Schmidt told Plaintiff that he would talk to Mr. Zou again, but no further action was taken. *Id.*

Plaintiff additionally alleges that, in November 2021, Gayle Welsh, the Inside Sales Representative for Broadcast and Government accounts, "changed ownership" of some Broadcast deals. *Id.* ¶ 41. In response, Mr. Zou initiated an "aggressive" email exchange with Ms. Welsh about the change. *Id.* Plaintiff was then added to the email thread to provide context for the decision, *id.* ¶ 42, and Mr. Zou replied to Plaintiff "in a hostile manner," falsely accusing Plaintiff of taking credit for someone else's work and implying that Plaintiff needed to rely on him to obtain customers, *id.* ¶¶ 43-45. Subsequently, on December 1, 2021, Plaintiff met in-person with Stephanie Hines, the General Counsel and VP of HR, and Mr. Schmidt. *Id.* ¶ 46. During that meeting, Mr. Schmidt told Plaintiff that he had communicated with Mr. Zou after seeing the email

3

to discuss his behavior and that "no further punishment" was needed. *Id.* Plaintiff asserts that, even after that meeting, Mr. Zou continued to interfere with her work. *Id.* ¶ 48. Specifically, on April 18, 2022, Mr. Zou once again reached out to Plaintiff's personal work contacts to invite them to a dinner event without her knowledge. *Id.*

Plaintiff also claims that Mr. Zou exhibited similar "disrespectful" behavior toward other women, including Ms. Brown and Amber King, a hiring manager. *Id.* ¶¶ 40, 70. And in the approximately nine months prior to Plaintiff's termination, three other women in leadership positions—Megan Riddle, Kamera Laws, and Tamara Gaubatz—left the company and sent letters to HR regarding the "hostile work environment, bullying[,] and favoritism/discrimination" to which they had allegedly been subjected. *Id.* ¶ 72.

Lastly, Plaintiff alleges that, on April 29, 2022, she reached out to Valerie Hillstad-Fliss, the head of HR, about taking Family and Medical Leave Act ("FMLA") leave to care for her ill parents. *Id.* ¶ 57. That same afternoon, she was notified by Mr. Schmidt and Ms. Hines that the Broadcast group was being eliminated and that her employment was therefore terminated. *Id.* ¶ 60. The purported reasons for her termination were cash flow and "pressure on the company." *Id.* ¶ 61. Plaintiff was also informed that her position was being reallocated to field and regional managers. *Id.* ¶ 60. She later learned that certain male employees in the Broadcast group, such as Barry Belsky—one of Plaintiff's direct subordinates—were given the opportunity to pursue other openings within the company. *Id.* ¶ 67. Plaintiff, meanwhile, was not provided this same opportunity, despite being told that she would be a "perfect fit" for one of the roles. *Id.* ¶ 68.

### B. Procedural Background

On August 3, 2023, Plaintiff filed a three-count Complaint against Defendant in this Court, alleging (1) retaliation in violation of the FMLA; (2) sex discrimination in violation of Title VII

of the Civil Rights Act of 1964 ("Title VII"); and (3) retaliatory termination in violation of Title VII. Dkt. 1. On October 23, 2023, Defendant filed a Partial Motion to Dismiss, seeking only to dismiss Count Two of the Complaint, Dkt. 12, along with a Memorandum in Support, Dkt. 13. On November 6, 2023, Plaintiff opposed Defendant's Motion, Dkt. 14, and on November 13, 2023, Defendant replied in support of its Motion, Dkt. 15.

## II. STANDARD OF REVIEW

In order to survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556); *see also Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) ("[T]he reviewing court must determine whether the complaint alleges sufficient facts 'to raise a right to relief above the speculative level.'" (quoting *Twombly*, 550 U.S. at 555)).

In reviewing a Rule 12(b)(6) motion, the Court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (internal quotations omitted). However, "the [C]ourt 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). "Labels, conclusions, recitation of a claim's elements, and naked assertions devoid of further factual enhancement will not suffice to meet the Rule 8 pleading standard." *ACA Fin. Guar. Corp. v. City*

*of Buena Vista, Virginia*, 917 F.3d 206, 211 (4th Cir. 2019) (citing *Iqbal*, 556 U.S. at 678). "A plaintiff has failed to state a claim where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Whittman v. Associa, Associations, Inc.*, No. 121CV00077RDATCB, 2022 WL 195498, at *4 (E.D. Va. Jan. 21, 2022) (citing *Iqbal*, 556 U.S. at 679), *aff'd*, No. 22-1186, 2022 WL 2914022 (4th Cir. July 25, 2022). Generally, the Court may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion, but "[u]nder narrow circumstances, a court may rely on extrinsic materials to determine a motion to dismiss without converting the proceeding into a motion for summary judgment." *See Goldfarb*, 791 F.3d at 508 (citing Fed. R. Civ. P. 12(d)).

## III. ANALYSIS

Plaintiff's sex discrimination claim in Count Two of her Complaint appears to contain two separate theories of liability: disparate treatment and hostile work environment. Defendant submits that Plaintiff has failed to state a plausible claim for sex discrimination under either theory. This Court will address each theory of liability in turn.

### A. Disparate Treatment

Title VII prohibits an employer from discriminating against "any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. At the motion to dismiss stage, "an employment discrimination plaintiff need not plead a prima facie case of discrimination." *Laurent-Workman v. Wormuth*, 54 F.4th 201, 210 (4th Cir. 2022) (quoting *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020)). Rather, a Title VII plaintiff need only "offer facts that plausibly support inferences" of the elements of her discrimination claim. *Id.* Where, as here, a plaintiff does not rely on direct evidence of discrimination, those elements are: "(1) membership in a

protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class."[2] *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir.2004)), *aff'd sub nom. Coleman v. Ct. of Appeals of Maryland*, 566 U.S. 30 (2012).

In the instant case, Defendant does not contest that Plaintiff has plausibly shown her membership in a protected class, satisfactory job performance, and at least one adverse employment action (refusing to increase Plaintiff's compensation package after 2019 and/or failing to create a new position for her when her group was eliminated). Dkt. 15 at 2-5. As such, only the fourth element is in dispute.

The similarly situated element requires Plaintiff to "provide evidence that the proposed comparators are not just similar in *some* respects, but 'similarly-situated *in all* respects.'" *Spencer v. Va. State Univ.*, 919 F.3d 199, 207-08 (4th Cir. 2019) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). "To that end, [P]laintiff must prove that she and the comparator 'dealt with the same supervisor, were subject to the same standards[,] and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Cosby v. S.C. Prob., Parole & Pardon Servs.*,

---

[2] This Court recognizes that "Plaintiff[] [is] not required as a matter of law to point to a similarly situated comparator in order to prevail on a discrimination claim." *Hurst v. D.C.*, No. 15–1410, 2017 WL 908208. at *4, n.5 (4th Cir. Mar. 7, 2017) (per curiam) (citing *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545 (4th Cir. 2003)). However, because Plaintiff here has chosen to rely on a comparator, "the validity of [her claim] depends upon whether that comparator is indeed similarly situated." *Taylor v. Millennium Corp.*, No. 1:15–CV–1046, 2016 WL 927185, at *6 (E.D. Va. Mar. 4, 2016) (quoting *Haywood v. Locke*, 387 Fed. Appx. 355, 359 (4th Cir. 2010)).

93 F.4th 707, 714 (4th Cir. 2024) (quoting *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223-24 (4th Cir. 2019)).

Plaintiff's Complaint appears to allege only one instance of disparate treatment from similarly situated employees outside her protected class.  Specifically, Plaintiff asserts that, after the Broadcast group was disbanded, Planar refused to offer her a role for which she was well-qualified but created positions for other male employees such as her direct subordinate, Mr. Belsky. Dkt. 1 ¶¶ 67, 90.  The Complaint, however, is devoid of any allegations suggesting that Plaintiff and Mr. Belsky had similar responsibilities or skills despite the different levels that they occupied at Planar.  *See Gordon v. Maryland State Police*, No. CV GLR-22-1699, 2023 WL 6161089, at *7 (D. Md. Sept. 21, 2023) (dismissing discrimination claim where plaintiffs did not offer the identities of any comparators, their experience level, or any particular skills).

Plaintiff also attempts to put forth Mr. Zou as a potential comparator in her Opposition. She avers that Planar failed to increase her compensation package from 2019 going forward while at the same time dramatically increasing Mr. Zhou's salary and promoting him several times. Dkt. 14 at 8.  However, because Plaintiff's allegation regarding Mr. Zou's salary increase and promotions appears nowhere in the Complaint, this Court need not consider Mr. Zou as a proposed comparator.  *See Marsh v. Virginia Dep't of Transp.*, No. 6:14-CV-00006, 2014 WL 6833927, at *8 (W.D. Va. Dec. 3, 2014) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (quoting *Morgan Distrib. Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989))).  Accordingly, the Court finds that Plaintiff has failed to plausibly allege the similarly situated element and will therefore dismiss her disparate treatment claim.

B. Hostile Work Environment

Turning to the next theory of liability, "[P]laintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). For such a claim to be viable, the Complaint must plausibly allege facts showing that the workplace is "permeated with 'discriminatory intimidation, ridicule, and insult'" which "would reasonably be perceived, and is perceived, as hostile or abusive." *Harris v. Forklift Sys.*, 510 U.S. 17, 21-22 (1993) (quoting *Meritor*, 477 U.S. at 65, 67). To meet this standard, Plaintiff "must offer facts that plausibly support inferences that 'she was subjected to (1) unwelcome conduct, (2) based on her . . . sex, that was (3) severe or pervasive enough to make her work environment hostile or abusive and (4) imputable to [ ] her employer.'" *Laurent-Workman*, 54 F.4th at 210 (quoting *Bazemore v. Best Buy*, 957 F.3d 195, 200 (4th Cir. 2020)). "While the first element is subjective, the rest of the test is made up of objective components based on a 'reasonable person' standard." *Pueschel v. Peters*, 577 F.3d 558, 565 (4th Cir. 2009) (quoting *Harris*, 510 U.S. at 21).

In the instant case, Defendant does not appear to dispute that the first and fourth elements are satisfied. Rather, Defendant argues that Plaintiff does not adequately allege that any unwelcome conduct was based on her sex and that Plaintiff fails to allege a sufficiently severe or pervasive hostile work environment. Dkt. 13 at 4-9. As such, this Court will focus its analysis on the second and third elements of Plaintiff's claim.

1. Based on Sex

Defendant first argues that Plaintiff has failed to show that the unwelcome conduct she complains of was based on her gender. To sufficiently plead the second element of a hostile work

9

environment claim, a plaintiff must allege "that her protected characteristic under Title VII was the 'but for' cause of the alleged harassment." *Laurent-Workman*, 54 F.4th at 210.

Plaintiff's hostile work environment claim here is primarily based on her allegations that Mr. Zou (1) told Plaintiff's supervisors that she was not qualified to lead webinars, Dkt. 1 ¶ 35; (2) sought to undermine Plaintiff's strategic relationships with Broadcast clients, *id.* ¶¶ 39, 48; and (3) falsely accused her of taking credit for others' work, *id.* ¶¶ 41-45. Critically, however, Plaintiff does not plead that any of Mr. Zou's emails to her or her supervisors contained sex-related remarks or undertones. Indeed, in the absence of any allegations that Mr. Zou used gender-related language in communicating to or about Plaintiff, the Complaint suggests that Mr. Zou treated Plaintiff the way he allegedly did not because she was a woman, but because she was a sales rival. As such, the alleged incidents with Mr. Zou cannot sustain a hostile work environment claim.

In her Complaint, Plaintiff does also allege that Mr. Zou exhibited "disrespectful behavior" towards other women, *id.* ¶¶ 40, 70, and that three other women in leadership positions at Planar—Ms. Riddle, Ms. Laws, and Ms. Gaubatz—sent letters to HR recounting a "hostile work environment, bullying[,] and favoritism/discrimination" before leaving the company, *id.* ¶ 72. Plaintiff is correct in pointing out that the targeting of several members of a plaintiff's gender can, in some circumstances, give rise to an inference that the conduct was based on sex. Dkt. 14 at 10; *see Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80-81 (1998) (instructing that a plaintiff may use "evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace" to establish that conduct was based on sex). But here, without more detail about Mr. Zou's behavior towards other women or what kind of harassment the three other women

10

who left the company allegedly faced,[3] the Court is unable to infer that the conduct they were subjected to was because of their sex. Accordingly, the Court finds that Plaintiff has failed to plausibly plead the second element of a hostile work environment claim and her claim will thus be dismissed.

### 2. Severe or Pervasive

Even assuming that she has sufficiently alleged the based on sex element, Plaintiff must still overcome the "high bar" of the "severe or pervasive test." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). In determining whether the severe or pervasive element has been met, courts consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. Importantly, the Fourth Circuit has made clear that "complaints premised on nothing more than rude treatment by [coworkers], . . . callous behavior . . . , or . . . a personality conflict . . . , are not actionable under Title VII." *Sunbelt Rentals*, 521 F.3d at 315-16 (internal quotations omitted).

In the instant case, the Court finds that the actions alleged by Plaintiff, while troubling, are not sufficiently severe or pervasive to state a plausible hostile work environment claim. Plaintiff's allegations here focus on a few emails that Mr. Zou sent to Plaintiff, her supervisors, and her clients in an attempt to discredit Plaintiff and undermine her professional relationships. But courts have declined to find a hostile work environment based on workplace misconduct far more severe and pervasive than what is alleged here. *See, e.g.*, *Buchhagen v. ICF Int'l, Inc.*, 545 Fed. Appx. 217,

---

[3] For instance, it is not at all clear from the Complaint that these women felt that they were being harassed or discriminated against because of their gender as opposed to some other protected characteristic like their race.

219 (4th Cir. 2013) (holding that allegations of a supervisor mockingly yelling at the plaintiff in a meeting, "yelling and pounding her hands on her desk during another meeting," "repeatedly harp[ing] on a mistake" made by the plaintiff, "making snide comments" to the plaintiff, "playing favorites with employees and pitting employees against each other," and "unfairly scrutinizing and criticizing" plaintiff's use of leave and lack of compliance with directives fall "short of being severe or pervasive enough to establish an abusive environment" (internal quotations omitted)). Ultimately, the factual allegations in the Complaint indicate little more than a rivalry between sales employees, and Title VII "does not provide a remedy for harassment when the animosity stems from workplace politics." *See Mangum v. Town of Holly Springs*, NO: 5:07-CV-425-BR, 2009 WL 10689320, at *5 (E.D.N.C., July 23, 2009) (quoting *Bianchi v. City of Philadelphia*, 183 F. Supp. 2d 726, 738 (E.D. Pa. 2002)). Accordingly, Plaintiff's hostile work environment claim cannot proceed beyond the motion to dismiss stage for this reason as well.

\* \* \*

In sum, Plaintiff has failed to plausibly allege sex discrimination under either a disparate treatment or hostile work environment theory of liability. With respect to the former theory, Plaintiff has not adequately alleged that she was treated differently from similarly situated employees outside her protected class. And as to the latter theory, Plaintiff has neither alleged that the unwelcome conduct she was subjected to was because of her sex nor alleged that the conduct was sufficiently severe or pervasive. Plaintiff's Title VII sex discrimination claim will therefore be dismissed.

IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Partial Motion to Dismiss (Dkt. 12) is GRANTED; Count Two of Plaintiff's Complaint is DISMISSED WITHOUT PREJUDICE.

If Plaintiff so chooses, she may file an Amended Complaint within thirty (30) days of this Memorandum Opinion and Order.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to counsel of record.

It is SO ORDERED.

Alexandria, Virginia
June 11, 2024

/s/
Rossie D. Alston, Jr.
United States District Judge